**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

---

**TIMOTHY GASTON,**

      **Plaintiff**                                                  **CASE NO: 2:22-cv-02334**

                                                  **JURY TRIAL DEMANDED**

**vs.**

**DOMINICK GOLDEN, individually**
**and as an officer of the Memphis**
**Police Department; JESSICA**
**LAINE, individually and as an**
**officer of the Memphis Police**
**Department; JEREMY**
**RUTHERFORD, JR., individually**
**and as an officer of the Memphis**
**Police Department; SARGENT D.**
**JOHNSON, individually and as an**
**officer of the Memphis Police**
**Department; the CITY**
**OF MEMPHIS.**

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR**
**DECLARATORY RELIEF AND DAMAGES**

---

      COMES NOW, Plaintiff, Timothy Gaston, and files this his First Amended Complaint for

Declaratory Relief, and Damages.  This lawsuit arises out of the unlawful, unconstitutional,

intentional, oppressive and grossly negligent conduct of the Defendants.

      These Defendants did unlawfully and falsely arrest Plaintiff, and violate his constitutional

rights under the Second, Fourth, and Fourteenth amendment of the United States Constitution.  The

Defendants lied under oath to obtain a false arrest warrant, continuously harassed Mr. Gaston

leading up to and after his false arrest, and maliciously prosecuted Mr. Gaston.  In support of his

First Amended Complaint for Declaratory Damages, Mr. Gaston states as follows:

## PARTIES

1.      Plaintiff, Timothy Gaston, is an adult citizen of the United States and of the State

of Mississippi.  He is a resident of Olive Branch, Mississippi.

2.      The individual Defendants are all citizens of the United States and of the State of

Tennessee.  All of the individually named Defendants are members and officers of the Police

Department of the City of Memphis, Tennessee ("MPD").  All of the individually named

Defendants were so employed on the dates of the incidents giving rise to this lawsuit.

3.      The Defendant City of Memphis ("City") is a municipal corporation under the laws

of the State of Tennessee.

## JURISDICTION

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343.  Subject

matter jurisdiction is conferred by 42 U.S.C. § 1983, § 1985, and  § 1986.  Pendant or

supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

## FACTS

5.      Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

6.      Plaintiff owns Gaston Auto Sales ("Gaston Auto") located at 2020 Airways

Boulevard.

7.      On June 1, 2021, employees from Gaston Auto made multiple calls to 911 to

report unruly customers at the Gaston Auto lot and requested assistance in having the unruly

customers removed from the lot.

8.      There were two sets of unruly customers, one group included two brothers, Desmond Clark, Daniel Clark, and their mother Rosalyn Finley collectively the ("Clark group").

9.      The other set of unruly customers was made up of Kendall McLaurin, Cordarius Black, Aalyiha Kemp, and Jeremy Mays, collectively the ("McLaurin group").

10.     The McLaurin group had come to the lot on multiple days to complain about the repossession of their vehicles and on each visit to Gaston Auto, they refused to leave when asked. In fact, at least one member of the group was videoed beating on the fence and attempting to climb the fence on the Gaston Auto lot.

11.     Although members of the McLaurin group had come to the Gaston Auto lot on numerous visits to complain, the members of the McLaurin group again came to the Gaston Auto lot on June 1, 2021. Each time the McLaurin group presented on the premises of Mr. Gaston's property, they got more and more unruly.

12.     Video footage shows members of the McLaurin group arriving at the Gaston Auto lot before 10:00 a.m. on the morning of June 1, 2021.  The members of the McLaurin group stayed well into the afternoon after being asked to leave on more than one occasion.

13.     On the same date Jeremy Mays, a member of the McLaurin group continually harassed Gaston Auto employee Darry Atkins while Mr. Atkins was attempting to work.

14.     Specifically, Mr. Atkins was behind a wooden fence on the Gaston Auto lot working, and Mr. Mays beat on the fence repeatedly and demanded Mr. Atkins come out.

15.     When asked to leave, Mr. Mays would not leave.  Also, the other members of the McLaurin group would not leave the Gaston Auto lot when asked.

16.     The Clark group also came to Gaston Auto on June 1, 2021.  Both Daniel and Desmond Clark had previously had cars repossessed made verbal threats to Darry Atkins.

Additionally, as noted above, the Clark group refused to leave the car lot after being asked repeatedly to leave.

17.     Eventually after multiple verbal threats, and refusing to leave, an altercation erupted around 3:00 p.m. on June 1, 2021, between the groups and employees of Gaston Auto.

18.     Gaston Auto employees made multiple calls to 911 to request the assistance of the MPD.  Mr. Gaston's business is located in the Airways Police district and members from the Airways Police district have been consistently hostile towards Mr. Gaston.  To include telling him they would not respond to his business if called.  Officer Golden is a member of the Airways Police District that is consistently hostile towards Mr. Gaston.

19.     Members from both groups confronted employee Mr. Atkins with a number of people surrounding Mr. Atkins while his back was to the Gaston Auto office.

20.     When this occurred, Plaintiff, Mr. Gaston came out of the Gaston Auto office with another Gaston Auto employee, David Brannan to assist Mr. Atkins.

21.     Plaintiff identified himself as the owner and told everyone to back up.

22.     The unruly customers laughed at this request.

23.     Next, Desmond Clark lunged at Plaintiff and reached for his hip as if reaching for a gun.

24.     When Mr. Clark reached for his hip, Plaintiff, Mr. Atkins and Mr. Brannan all pulled out guns.

25.     When Plaintiff pulled out his weapon, he dropped it on the ground.

26.     Mr. Atkins and Mr. Brannan pulled out their weapons and kept them at their sides at all times. At the time of the event Mr. Gaston and his employees were on Mr. Gaston's private

4

property.  Tennessee law allows an owner to protect his property from third parties when they

feel threatened. T.C.A 39-11-611(c):

> "(c) Any person using force intended or likely to cause death or serious bodily injury
> within a residence, business, dwelling or vehicle is presumed to have held a reasonable
> belief of imminent death or serious bodily injury to self, family, a member of the
> household or a person visiting as an invited guest, when that force is used against another
> person, who unlawfully and forcibly enters or has unlawfully and forcibly entered the
> residence, business, dwelling or vehicle, and the person using defensive force knew or
> had reason to believe that an unlawful and forcible entry occurred."

27.     At no point did Plaintiff, Mr. Atkins or Mr. Brannan point their weapon at any

person.

28.     As noted above, when Plaintiff pulled out his weapon he dropped it on the

ground.  He picked up his gun and never pointed it at any person.

29.     Mr. McLaurin recorded the whole incident and posted the video on Facebook

Live.  Throughout the video, Mr. McLaurin could be heard taunting Plaintiff and his employees

and laughing while the incident occurred.

30.     In fact, when Plaintiff and the Gaston Auto employees pulled out their weapons,

Mr. McLaurin's video showed that he (Mr. McLaurin) was giggling, smiling and pulling out a

weapon of his own while laughing and saying "Hold on Baby, Hold on Baby"  like the whole

incident was a joke.

31.     The video Mr. McLaurin recorded showed he was not involved in the altercation

and that no one pointed a gun at him.

32.     Mr. McLaurin testified under oath that when police arrived, he showed them the

video he recorded.  He also testified that he told the officer that he had three guns with him, one

on his person, one in the arm rest and one in the trunk of his vehicle.  Mr. McLaurin possession

of weapons were in violation of Tennessee Law.

33. When the initial officer arrived on the scene, upon information and belief, Officer Jessica Laine, she said that she saw the unruly customers and was going to call for back-up to have them removed.

34. However, upon the arrival of Officer Dominick Golden, the entire direction of the MPD investigation changed.

35. When Officer Golden arrived on the scene he initially talked with the unruly customers in both the Clark and McLaurin groups.

36. Although the Gaston Auto employees were the ones that initially called and asked for police assistance, Officer Golden did not initially speak with them.

37. Instead, Officer Golden talked first with the unruly customers of the Clark and McLaurin groups.

38. Daniel Clark could be heard stating, "man, these guys are legit I'm going to get out of here."

39. At that point, Officer Golden told Mr. Clark to wait and not leave. Specifically, Officer Golden could be heard saying "we will see about that, I make arrests that's what I do. Watch this."

40. Officer Golden announced he would arrest Plaintiff and his employees before he even spoke with them.

41. After talking to members of the Clark group and the McLaurin group Officer Golden then asked Plaintiff if he had a gun on him. Plaintiff stated that he did, and he tried to offer his carry permit to Officer Golden.

42. Officer Golden refused to look at the carry permit while also using expletives.

6

43.     Upon Plaintiff's comment that he had a gun, Officer Golden placed Plaintiff in custody.

44.     As noted above, Mr. McLaurin testified under oath that he showed the video he filmed to the police. He admitted to having multiple guns on his person and according to Officer Golden's testimony Mr. McLaurin was the most rowdy on the scene.

45.     It is undeniably clear in Mr. McLaurin's video that Plaintiff tried to calm the situation down by asking everyone to back up, that he never pointed a gun at any person, and that he was lawfully at his place of business.

46.     Despite a video clearly showing that neither Plaintiff, nor Darry Atkins nor David Brannan pointed a gun at anyone from the Clark group or the McLaurin group, Defendants detained and subsequently arrested Plaintiff and his employees on seven (7) charges of aggravated assault.

47.     Additionally, Plaintiff was charged as a felon in possession of a weapon.

48.     Plaintiff, Mr. Gaston, legally had his right to carry a firearm restored in Shelby County Circuit Court on or about August 14, 2020.

49.     Additionally, Mr. Gaston had a Mississippi carry permit on his person at the time of his arrest.

50.     A quick review of the video shot by McLaurin shows that a number of the alleged seven (7) "victims" were nowhere near Plaintiff or his employees when they allegedly pulled weapons.  Clearly Mr. McLaurin wasn't in fear for his life because he was laughing, smiling, and taunting Plaintiff and his employees while pulling out a weapon of his own.

51.     Another alleged "victim" can be seen casually sitting on a car watching the whole incident.

52.     In addition, Plaintiff attempted to give a copy of his carry permit and proof that he was legally able to carry a weapon to Officer Golden.  Officer Golden refused to look at the carry permit or any other documentation.

53.     Later when Officer Golden was asked under oath if Plaintiff had attempted to give him a copy of his carry permit, Officer Golden lied and said "no".

54.     Officer Golden admitted under oath during Plaintiff's preliminary hearing that he knew that at least one of the victims at the scene had a gun on him.

55.     At Plaintiff's preliminary hearing, Mr. McLaurin stated under oath that on the day of the incident, while on the Gaston Auto car lot, he had three weapons on him and that police told him it was his right to have these weapons as long as he kept them in his car.

56.     However, under Tennessee Code Annotated 39-17-1359 it is a criminal offense to bring a weapon onto private property when there is a sign stating weapons are not allowed on the premises.

57.     Officer Golden acknowledged as much under oath.  Officer Golden at Mr. Gaston's preliminary hearing testified that if a sign states weapons are not allowed and the TCA is listed underneath, it is illegal for any person to bring a weapon onto the property.

58.     Gaston Auto has multiple signs clearly displayed stating that weapons are not allowed on the premises.

59.     At the time of the incident, there was a sign on the gate coming into Gaston Auto's lot stating that weapons are not allowed on the premises.

60.     There was another sign on the Gaston Auto office door and another sign on the plexi-glass window inside the Gaston Auto lot all stating that weapons are not allowed.

61.     Any person entering the Gaston Auto property had to pass by the sign just to enter the property.

62.     There is also a sign on the front door of the Gaston Auto building.  In order to open the door to the building you have to look right at the sign.

63.     Once inside the Gaston Auto building, there is a plexi-glass window that employees stand behind when they interact with customers.  There is an additional sign on the plexi-glass window.  To talk with any person that works at Gaston Auto, you have to look at the sign stating no weapons are allowed.

64.     As noted above, Officer Golden admitted that he knew at least one of the alleged victims had a weapon on him while on the Gaston Auto premises.

65.     Although there were clearly displayed signs stating that weapons were not allowed all over the Gaston Auto property, Defendants admitted to knowingly allowing trespassers to violate Tennessee law and have multiple weapons in their possession.

66.     Yet, Mr. Gaston, who had a legal right to carry a weapon was ultimately arrested when he did absolutely nothing wrong.  In addition, Defendants refused to even look at Mr. Gaston's documentation showing that he had a legal right to carry a firearm.

67.     In addition to the above, Defendants submitted a false Affidavit of Complaint in order to secure an Arrest Warrant for Mr. Gaston.

68.     The Affidavit of Complaint against Mr. Gaston states the following:

Memphis Police Department responded to the Aggravated Assault call at 2020 Airways Blvd. (Gaston Auto Sales), Kendall McLaurin, Desmond Clark, Daniel Clark, Cordarius Black, Rosalyn Finley, Aalyiha Kemp, and Jeremy Mays all advised Timothy Gaston pulled out a black handgun, pointed it at the crowd, and made threats to do bodily harm.  Officers recovered a Glock 27 .40cal serial #BTAB109 and a Glock 23 .40cal serial #BT5M559 from Timothy Gaston's person on scene.  Timothy's information was ran through Odyssey, and he was found to be a convicted Felon.  Timothy had an Aggravated Robbery

conviction on 06/28/1995.  Timothy plead guilty in Judge Lee Coffee court room Division 7.  Timothy Gaston was transported to 170 N. Main St. to speak with investigators, but he refused to give a statement.

69.     The information provided in the sworn Affidavit of Complaint represents false and inaccurate information.

70. The Sworn Affidavit states that:

    a. Mr. Gaston pointed this gun at a "crowd" of seven (7) people;

    b.  Mr. Gaston made threats to do bodily harm;

71.     However, McLaurin's video clearly shows all of these statements are false, and complete fabrications.

72.     The McLaurin video shows:

    a.  **Mr. Gaston never pointed a gun at anyone**.

    Mr. Gaston pulled out his gun and dropped it on the ground.  In addition, the video shows that Mr. Gaston's employees didn't point guns at anyone either.  Mr. Gaston's employees took out their guns and put them at their sides.

    b.  **There was no "crowd" of seven people.**

    Mr. McLaurin's video shows that Mr. Gaston and his employees were surrounded by Daniel Clark, Desmond Clark and their mother.  The video shows Mr. McLaurin on the side, making jokes, laughing, smiling, pulling out his gun while filming the video.  Additionally, other members of the McLaurin group could be seen sitting on a car looking at the activities.   Even if Plaintiff pointed a weapon (which he didn't) there were not seven people around him to point his gun at.

    c.  **Mr. Gaston never made any verbal threats to do bodily harm.**

10

The audio on Mr. McLaurin's video shows that Mr. Gaston identified himself as the owner of Gaston Auto. This comment was met with expletives from the unruly customers. Additionally, Mr. Gaston could be heard asking the unruly customers to "back up". The video shot by Mr. McLaurin shows that from the time Mr. Gaston exited his building and begins speaking with the unruly trespassers until the time the events were over, Mr. Gaston never made any threatening comments or statements. However, the unruly customers continued to shot expletives and shout statements including "Die, N**a, Die".

73.     As noted above, officers at the scene reviewed the video provided by McLaurin. A review of the video makes it clear that Plaintiff never pointed his weapon, and in fact he dropped his weapon. It is also clear that even if he did point a weapon (which he didn't) there were not seven (7) people near him to point the weapon at. Also, there is audio on the video and at no time did Plaintiff make any verbal threats to any person. In fact, if anything Plaintiff tried to calm the situation down by telling everyone present to back up.

74.     Additionally, Plaintiff tried to offer proof that he was legally allowed to carry a weapon, and it was refused by Officer Golden.

75.     However, despite all of this, in violation of Mr. Gaston's constitutional rights, Memphis police officers lied about the events under oath in a sworn affidavit in order to obtain an arrest warrant for Mr. Gaston.

76.     The City has multiple policies that require City employees and specifically Memphis police officers to be honest. Specifically, MPD policy DR-104 Personal Conduct

requires that Memphis police officers not commit unlawful acts and to abide by the Law

Enforcement Code of Ethics.

77.     Additionally, the Memphis Police Department Policies and Procedures updated

January 31, 2020, cite that all Memphis Police Officers will adhere to the Law Enforcement

Code of Ethics which provide in part:

> As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property, *to protect the innocent against deception*, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to *respect the Constitutional rights of all persons to liberty, equality and justice.* . . .  Emphasis added.

> Additionally, the Code requires officers to be "Honest in thought and deed"

> Also, the Code states:

> The public demands that the integrity of its law enforcement officers be above reproach, and the dishonesty of a single officer may impair public confidence and cast suspicion and disrespect upon the entire Department. Succumbing to even minor temptation can be the genesis, which will ultimately destroy an individual's effectiveness and contribute to the corruption of countless others. A member must scrupulously avoid any conduct, which might compromise the integrity of themselves, their fellow members or the Department.

Finally,

"The rights of the member, as well as those of the public, must be conducted fairly,

impartially and efficiently, *with the truth as its primary objective*."  Emphasis added.

Memphis Police Department Policy and Procedures, Revised January 31, 2020 Citing requirement of Memphis Police Officers to adhere to the Law Enforcement Code of Ethics (1.1.2).

78.     Officer Golden testified under oath that investigations are supposed to be fair,

impartial and unbiased.

79.     Despite this testimony, MPD violated Plaintiff's constitutional rights by

submitting a knowingly false sworn affidavit to secure an arrest warrant for Plaintiff.

12

## ONGOING CONDUCT BY THE CITY OF MEMPHIS

80.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

81.     The City of Memphis has an ongoing history of officers failing to follow procedures and being dishonest.

82.     There are numerous instances of Memphis police officers lying and being dishonest: Memphis police officer, Lt. Eric Kelly, lied about his sexual relationship with a murder suspect; Memphis Police Officer Sam Blue, lied about trafficking drugs and weapons; Memphis Police Officer Carrous Davis who similar to the Defendants in this matter, made fraudulent arrests; and Leo Whitmore who did the same.

83.     Similar to the current the matter, in *Cole, et al v. City of Memphis*, once again Memphis police officers harassed, and unlawfully arrested the two named plaintiffs in the complaint.  *Cole, et al v. City of Memphis*, 2:13-cv-02117., June 3, 2015.

84.     In *Cole*, the two plaintiffs, who were both off-duty law enforcement officers, were legally enjoying Beale Street when Memphis police officers harassed them, and unlawfully detained and arrested them.  *Id*.

85.     The continued acts of dishonesty, harassment and illegal false arrests by Memphis police officers show that it is a custom or practice of Memphis police officers to unlawfully arrest citizens, lie under oath and harass citizens.

86.     Further, the City by virtue of these many repeated instances of unlawful arrest, untruthfulness and harassment by Memphis police officers is acutely aware of these customs and practices.

87.     The City has failed to adequately train and/or has ignored these abuses.

88.     Further the Memphis police department policies or customs to lie under oath, harass, and falsely arrest citizens inflicted injury upon Mr. Gaston.

89.     At all times relevant hereto, Mr. Gaston was lawfully present in a place where he had a right to be, and the Defendants in harassed Mr. Gaston, violated his constitutionally protected rights, and conspired against him.

90.     These repeated instances of dishonesty, unlawful conduct, and unlawful arrests by Memphis police officers show that the City has a repeated history of failing to adequately train and supervise its employees as shown by the numerous officers named above who committed numerous illegal acts and acts similar actions to those alleged in this Complaint.

91.     The City failed to adequately train and supervise its police officers.  Multiple police officers viewed the video shot by Mr. McLaurin at the scene, and the video filmed by Mr. McLaurin shows the facts contained in the sworn affidavit were false, and despite this fact, members of the Memphis Police Department offered the sworn affidavit as truth before the magistrate to secure a false arrest warrant.

92.     Because of the City's failure to train and supervise its policemen and employees Plaintiff was subjected to an unlawful arrest based on a false affidavit, false imprisonment, malicious prosecution and ongoing harassment.

93.     The City of Memphis has an ongoing history of officers failing to follow procedures and be dishonest.

## ONGOING HARRASSMENT

94.     Memphis police officers from the Airways Precinct of the MPD were familiar with Gaston Auto and its employees.

95.     Mr. Gaston is in the business of selling used cars and his business is located in the MPD Airways Precinct.

96.     When Mr. Gaston's customers fail to pay or they otherwise breach their contract, their cars may be repossessed.

97.     On more than one occasion when a Gaston Auto customer had their car legally repossessed, customers would call the police and police officers from the Airway precinct would respond.

98.     However, members of the Airways precinct instead of telling customers that a legal repossession was a civil matter, would try to make a legal repossession a criminal matter.

99.     On one specific occasion, Gaston Auto repossessed a vehicle, and as required by Tennessee law, Gaston Auto called and reported the repossession before the car was towed.

100.    Mr. Gaston's customer called the MPD to complain once they discovered the car had been repossessed.

101.    Officer Dominick Golden responded to the call.

102.    Despite Gaston Auto's report that the car was towed, Officer Golden reported the vehicle was stolen.  This resulted in additional investigation by the MPD, and a request to see the vehicle in question.

103.    This investigation was unwarranted because the vehicle was accurately reported as repossessed, and clearly was not stolen.

104.    Additionally, Plaintiff and his business have been subjected to unwarranted calls and investigations by the MPD.

105.    Memphis police officers have repeatedly told Mr. Gaston's clients that they shouldn't do business with him or Gaston Auto.

15

106.     After his arrest, Mr. Gaston was subjected to additional harassment and violation of his Second Amendment rights when the Memphis Police Department refused to return his legally obtained firearms, despite a lawful court Order directing them to do so.

107.     At the time of his arrest, MPD seized seven (7) firearms from the Gaston Auto lot.

108.     A preliminary hearing was held in this matter on December 1, 2021 and at that time, dismissed all seven (7) counts of aggravated assault against Mr. Gaston and the State of Tennessee ("State") *nolle prosequi* the charge of felon in possession against Mr. Gaston.

109.     On December 14, 2021, the Court entered an Order Returning Property ("Order") that directed all Mr. Gaston's property be returned to him.

110.     Subsequent, Mr. Gaston delivered a copy of the Order to the MPD Property and Evidence Room.

111.     Despite having a valid court order, the Property and Evidence room did not comply with this Court's order, but rather directed Mr. Gaston to make changes to the Order.

112.     As a courtesy, Mr. Gaston's attorney modified the Order and on January 4, 2022, the Court entered Order Correcting December 14, 2021 Order Returning Property.

113.     Mr. Gaston delivered this Second Order to the MPD Property and Evidence room on or about January 4th or 5th, 2022.

114.     Mr. Gaston then made continued visits and calls to the MPD Property and Evidence room in an attempt to retrieve his belongings.

115.     However, despite these repeated calls and visits the MPD still refused to return Mr. Gaston's weapons.

116.    Mr. Gaston was given various reasons by the employees of the MPD Property and Evidence Room on why his property had not been returned.  Finally, Mr. Gaston in frustration requested assistance from his attorney.

117.    MPD employees manufactured several reasons Mr. Gaston's weapons had not been returned.  One excuse was that the Court's modified order directing Mr. Gaston's weapons be returned was not valid.  MPD stated that because Judge Lambert Ryan had interlineated the date on the Order from December to January it invalidated the Order.

118.    Next, MPD employees stated that Mr. Gaston's background check had not been completed, even though Mr. Gaston was told by more than one MPD employee on more than one occasion that his background check was already complete.

119.    Next, MPD employees stated that Mr. Gaston had come down to inquire about his property and was told that they would call him, specifically MPD employees stated, "we said we would call him, we'll call him".

120.    A supervisor in the MPD property and evidence room then stated that they had approval to release the Mr. Gaston's property on Friday, January 21, 2022.

121.    The supervisor stated he believed Mr. Gaston would receive a call later in the day on January 24, 2022 to set up an appointment to pick up his weapons.

122.    As of the January 31, 2022, no one had contacted Mr. Gaston to pick up his property.

123.    As a result, on January 31, 2022 Mr. Gaston filed a Motion for Contempt and Sanctions based on the failure to return his personal property.

124.    Later, on the same day Mr. Gaston filed his Motion, the MPD Property room called Mr. Gaston and told him to pick up his weapons on February 1, 2022, two months after all

charges against Mr. Gaston were dismissed, and eight months after Defendants made false

statements to secure an arrest warrant.

125.    Mr. Gaston at all times relevant hereto had a legal right to carry a firearm.

126.    Mr. Gaston, attempted to provide Officer Golden proof of his right to carry, and

Officer Golden refused to look at it.

127.    Mr. Gaston was charged with seven (7) counts of aggravated assault, and as a

felon in possession of a weapon.

128.    However, all of the charges against Mr. Gaston were dismissed.

129.    Mr. Gaston did absolutely nothing wrong, and had a legal right to carry a weapon,

yet despite this, Defendants took his weapons, and held them for no valid reason harassing Mr.

Gaston and violating Mr. Gaston's Second Amendment rights.

130.    Mr. Gaston then had a valid court order directing the MPD to return his firearms.

131.    In an ongoing effort to harass Mr. Gaston, the MPD ignored a valid court order,

and held Mr. Gaston's personal property for no apparent reason and violated his constitutional

rights under the Second Amendment.

### **COUNT ONE – VIOLATION OF 42 U.S.C. § 1983**

132.    Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

133.    Title 42 U.S.C § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation,
> customer, or usage, or any state or territory or the District of Columbia,
> subjects or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity or other proper
> proceeding for redress.

134.    Defendants violated 42 U.S.C. § 1983 when they violated Mr. Gaston's constitutional rights under the 2nd 4th, and 14th Amendments of the U.S. Constitution.

<u>**COUNT TWO – UNLAWFUL ARREST AND FALSE AFFIDAVIT**</u>

135.    Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

136.    On June 1, 2021, Jeremy Rutherford, Jr. Badge No. 14114 signed a sworn affidavit stating that Plaintiff pointed a gun at seven (7) alleged victims, that Plaintiff made verbal threats, and that Plaintiff was illegally in possession of a handgun as a convicted felon.

137.    Although Officer Rutherford signed the affidavit, Sargent D. Johnson badge number 10598 appeared before the magistrate and testified under oath to the facts contained in the affidavit.

138.    Officers Rutherford, and Sargent Johnson knew or should have reasonably known these were false statements because Kendall McLaurin prepared a video recording of the incident.

139.    The video recording prepared by Mr. McLaurin was shown to officers at the scene of the incident, 2020 Airways Blvd, Memphis, Tennessee, prior to the preparation of the Affidavit of Complaint, and prior to Mr. Gaston's arrest.

140.    The video recording shows that Plaintiff at no time pointed a weapon at anyone, but rather he dropped his weapon on the ground.

141.    Additionally, the video shows that Plaintiff did not make any threats of bodily harm but rather he identified himself as the owner of Gaston Auto and requested the unruly customers on his business property to back up.

142.    Also, Plaintiff tried to offer proof of his right to carry a firearm, and investigating officer Dominick Golden refused this information.

143.   As a result of these facts, Officer Rutherford, Sargent Johnson and the investigating MPD Officers knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood while applying for a warrant.

144.   These false statements resulted in the unlawful arrest of Plaintiff.

145.   As a direct result of the false affidavit and unlawful arrest by the Defendants, Plaintiff experienced pain and suffering, loss of economic benefits, and considerable mental anguish.

146.    Plaintiff seeks compensatory and punitive damages from the Defendants for their unlawful arrest of him on June 1, 2021.

## COUNT THREE – FALSE IMPRISONMENT

147.   Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

148.   On June 1, 2021 Plaintiff was unlawfully detained without probable cause or any arguable cause when the individually named Defendants who are members of the Memphis Police Department knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood while applying for an arrest warrant.

149.   As a direct consequence of the false imprisonment by the individually named Defendants, Plaintiff experienced pain and suffering, loss of economic benefits, and considerable mental anguish.

150.   Plaintiff has a federal constitutional right to be free from false imprisonment. *United States v. Richardson*, 949 F.2d 851 (6th Cir. 1991).

151.   Plaintiff seeks compensatory and punitive damages from the individually named Defendants as a result of his false imprisonment.

## COUNT FOUR – FAILURE TO TRAIN AND SUPERVISE

152.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

153.     Defendant City of Memphis has failed to adequately train and supervise its police officers and its other employees this failure to train and supervise its police officers and employees amounts to deliberate indifference to the rights of persons with whom the police come in contact.

154.     The Defendant City of Memphis has a policy that officers must be honest and not lie under oath or before any court. Specifically, DR-104, and the Memphis Police Department Policies and Procedures require Memphis Police Officers to abide by the Law Enforcement Code of Ethics, this additionally requires that officers be honest and that they conduct fair, impartial investigations.

155.     The City of Memphis failed to adequately train and supervise its police officers because multiple police officers viewed the video shot by Mr. McLaurin at the scene.  The video filmed by Mr. McLaurin shows the facts contained in the sworn affidavit were false, and despite this fact, members of the Memphis Police Department offered the sworn affidavit as truth before the magistrate to secure a false arrest warrant.

156.     Additionally, Officer Golden testified he understood that investigations were supposed to be fair, impartial and unbiased.

157.     Yet despite this, Officer Golden 1) told Mr. Clark that he was going to arrest Mr. Gaston before speaking with Mr. Gaston directly, 2) knowingly allowed Mr. McLaurin to have three (3) weapons in his possession despite this being a violation of Tennessee law, 3) failed to review evidence Mr. Gaston had on his person that showed he had a valid license to carry a

firearm; and 4) subjected Mr. Gaston to an unlawful detention without any facts at all to justify his arrest and detention.

158.    Because of the City's failure to train and supervise its policemen and employees Plaintiff was subjected to an unlawful arrest based on a false affidavit, false imprisonment, deprivation of his right to carry a firearm, malicious prosecution and ongoing harassment.

159.    The City of Memphis has an ongoing history of officers failing to follow procedures and be dishonest.

160.    Specifically, Plaintiff points to Memphis Police officers Lt. Eric Kelly, who lied about his sexual relationship with a murder suspect; Sam Blue, who lied about trafficking drugs and weapons; Carrous Davis who made fraudulent arrests; and Leo Whitmore who did the same.

161.    The Defendant City of Memphis has a repeated history of failing to adequately train and supervise its employees as shown by the numerous officers named above who committed similar actions to those alleged in this Complaint.

162.    The City's actions show a complete failure to train the police force or in the alternative training that is so reckless or grossly negligent that future police misconduct is almost inevitable or substantially certain to result.

163.    The City of Memphis knew or should have known that its failure to train and supervise would result in the deprivation of Mr. Gaston's or another citizen's constitutional protected rights.

164.    The conduct of the City was intended to injure Plaintiff and is in violation of Plaintiff's substantive due process rights.

165.    Plaintiff suffered damages as a result of the City's actions.

166.   Plaintiff seeks compensatory and punitive damages as a result of the City's actions.

<h2 style="text-align:center"><u>COUNT FIVE – MALICIOUS PROSECUTION</u></h2>

167.   Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

168.   The individually named members of the Memphis Police Department brought criminal charges against Mr. Gaston without probable cause.

169.   Officer Dominick Golden specifically decided to arrest and charge Mr. Gaston before he ever spoke with Plaintiff or any of his employees telling Mr. Clark not to leave the scene and that he was going to "show him" by making an arrest.

170.   Also, Mr. McLaurin filmed the events that happened on June 1, 2021 at the Gaston Auto lot.

171.   Mr. McLaurin testified that he showed officers at the scene this video.

172.   As a result, the investigating officers on June 1, 2021 clearly saw that Mr. Gaston did not raise his weapon and point it at anyone or verbally threaten any person.

173.   Defendants brought the criminal charges against Mr. Gaston with malice.

174.   The criminal charges against Plaintiff were dismissed, and terminated in favor of Plaintiff.

175.   Plaintiff suffered damages as a result of Defendants' malicious prosecution.

176.   Plaintiff seeks compensatory and punitive damages as a result of Defendants' actions.

<h2 style="text-align:center"><u>COUNT SIX – VIOLATION OF 42 U.S.C. § 1985 AND 1986</u></h2>

177.   Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

178.    The investigating officers at the scene of 2020 Airways Blvd, Gaston Auto Sales watched the video prepared by Mr. McLaurin.

179.    This video clearly showed that the facts outlined in the Affidavit of Complaint are untrue and false.

180.    Additionally, Defendants did conspire to continually harass Mr. Gaston by making claims of theft based on civil repossessions, making unnecessary visits, and refusing to return his personal property.

181.    Defendants conspired with the unruly customers and determined to falsely arrest Mr. Gaston prior to even speaking with him about the incidents that occurred on June 1, 2021.

182.    This conspiracy was for the purpose of depriving Mr. Gaston the equal protection of the laws or of equal privileges and immunities under the laws as a former felon who had his civil rights restored or in the alternative as an African-American, hetero-sexual male.

183.    Also, Memphis police officers did conspire with Mr. McLaurin when in violation of Tennessee law Mr. McLaurin was allowed to keep three weapons on private property in violation of Tennessee law, while Mr. Gaston was falsely arrested as a felon in possession of a weapon.

184.    Further, upon information and belief more than one of the Memphis Police officers conspired with the unruly customers to solicit false statements from the  the seven (7) alleged victims against Mr. Gaston.

185.    The acts of these Memphis Police officers deprived Plaintiff of his constitutionally protected rights and equal protection of the laws.

186.    Additionally, Plaintiff suffered damage as a result of Defendants actions.

187.     Defendants had knowledge of the conspiracy against Mr. Gaston and had the power to prevent said conspiracy and neglected or refused to prevent the same.

188.     Pursuant to 42 U.S.C. § 1986, Plaintiff is entitled to damages as a result of this conspiracy.

### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that the Court set this case for trial by jury at the earliest date practicable after affording adequate discovery to the parties. In consideration of the evidence to be presented at trial, Plaintiff prays the Court:

1.     Declare that the Defendants have violated the Plaintiff's rights under 42 U.S.C. § 1983 by violating his Second Amendment right to bear arms, and his Fourth and Fourteenth Amendment rights by falsely swearing an Affidavit of Complaint, Unlawfully Arresting Plaintiff, Falsely Imprisoning Plaintiff, violating his right to bear arms, and harrassing Plaintiff;

2.     Declare that the Defendants did unlawfully Conspire to violate Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1985;

3.     Award Plaintiff damages pursuant to 42 U.S.C. § 1986;

4.     Award Plaintiff his costs herein, including a reasonable attorney's fee pursuant to U.S.C. § 1988;

5.     Enter the amount set by jury verdict for compensatory and punitive damages against the Defendants for unlawful arrest, false imprisonment, malicious prosecution, and the City of Memphis' failure to train and supervise; and

6.      Plaintiff also seeks such other, further, and different relief as to which he may be entitled.

Respectfully Submitted,
/s/Laura E. Smittick
Laura Smittick, Esq., #32374
242 Poplar Avenue
Memphis, TN 38103
Phone: (901) 338-0404
support@smitticklaw.com

Darrell J. O'Neal (#20927)
2129 Winchester Avenue
Memphis, TN 38116
Phone:  (901) 345-8009
domemphislaw@darrelloneal.com

## CERTIFICATE OF SERVICE

I, Laura E. Smittick, hereby certify that the foregoing document has been filed electronically with the Court and a copy has been provided to the following via the Court's ECF system on August 24, 2022.

Timothy Taylor
Barclay Roberts
50 North Front Street, Suite 800
Memphis, TN 38103
TTaylor@gmlblaw.com
BRoberts@gmlblaw.com

Freeman Foster
125 N Main St Room 336
Memphis, TN 38103

Dennis Hawkins
125 N Main St Room 336
Memphis, TN 38103
Dennis.Hawkins@memphistn.gov

/s/Laura E. Smittick